# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

## CASE NO. 1:25-cv-24117

JOHN DOE,

    Plaintiff,

v.

VOLODYMYR MYKOLAYOVYCH SYNELNYK and THE DONETSK PEOPLE'S REPUBLIC,

    Defendants.

_____/

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff John Doe[1] brings this action for damages caused by Defendants' acts of terrorism in violation of the laws of the United States.

## NATURE OF THE ACTION

This is a civil action for damages arising from an act of terrorism committed on June 27, 2023, in Kramatorsk, Ukraine: the bombing of the Ria Lounge, a restaurant known to be frequented by expatriate journalists and humanitarian workers, as well as the family and friends of Ukrainian service members. The attack was intended to coerce and intimidate expatriates to prevent them from bearing witness to Russia's crimes or lending support to the Ukrainian people; to punish

---

[1] This Complaint alleges that Plaintiff suffered grave physical and psychological injuries as the result of a terrorist missile attack ordered by an indicted international criminal who runs a massive criminal enterprise. In addition to terrorist attacks, Putin's Russia commits targeted murders of outside of borders, causing a fear of reprisal. This Complaint also alleges brain injuries and psychological suffering that could subject John Doe to stigmatization. John Doe's well-founded fears of reprisal and stigmatization are heightened by the psychological conditions he suffers as a result of the attack. For these reasons, the Plaintiff is identified by pseudonym.

expatriates for having done so; to coerce their governments into limiting their abilities to travel to Ukraine; and to coerce, intimidate, and demoralize the Ukrainian people by murdering the civilian family and friends of Ukrainian soldiers.

In the attack, John Doe, a U.S. Citizen, who had travelled to Ukraine to perform humanitarian work, and who, not surprisingly, ended up at the Ria Lounge, suffered grave injuries.

This lawsuit seeks redress from those responsible for the attack: the spotter who directed the missile to the civilian target, and his handlers—the separatist terror group the Donetsk People's Republic ("DPR").

## THE PARTIES

1. Plaintiff John Doe is a national of the United States.

2. Defendant Volodymyr Mykolayovych Synelnyk ("Synelnyk") is a national of Ukraine, residing in the Donetsk region of Ukraine.

3. Defendant the DPR is a pro-Russian separatist group in Donetsk, Ukraine.

## JURISDICTION AND VENUE

4. This is a civil action brought by a United States citizen victim of international terrorism pursuant to 18 U.S.C. § 2331 *et seq*. This Court has subject matter jurisdiction pursuant to 18 U.S.C. § 2333(a), 28 U.S.C. §§ 1331 and 1332.

5. Pursuant to 18 U.S.C. § 2338, the district courts of the United States have exclusive jurisdiction over this action.

6. Defendants are not residents of the United States and, pursuant to 28 U.S.C. § 1391(c)(3), may be sued in any district.

**Defendant Synelnyk**

7. This Court has personal jurisdiction over Defendant Synelnyk pursuant to Fed. R. Civ. P. 4(k)(2) because he is not subject to jurisdiction in any state court and his conduct was intentionally and expressly aimed at the United States and/or directed at and felt in the forum.

**Defendant DPR**

8. This Court has personal jurisdiction over Defendant DPR pursuant to Fed. R. Civ. P. 4(k)(2) because it is not subject to jurisdiction in any state court and its conduct was intentionally and expressly aimed at the United States and/or directed at and felt in the forum.

## FACTUAL ALLEGATIONS

*The Donetsk People's Republic's Use of Terror Attacks.*

9. The Donetsk People's Republic ("DPR") has a pattern and practice of attacking foreign civilians, including the shootdown of Malaysia Airlines Flight 17.

10. Ukraine, as well as the German Prosecutor General's Office, regard the DPR as a terrorist organization.

11. Organizations such as the UN Human Rights Office and Human Rights Watch have reported human rights abuses in the DPR, including internment, arbitrary and incommunicado detention, forced labor, torture, extrajudicial killings, and forced conscription, as well as political and media repression.

*Defendant Synelnyk and His Direction by DPR*

12. Defendant Synelnyk is a native of and until his arrest resided in Kramatorsk, the administrative center of the Donetsk region.

13. One of Defendant Synelnyk's known associates is Trush Artur Viktorovich ("Trush").

3

14. Defendant Synelnyk has known Trush since approximately 1999.

15. Defendant Synelnyk knew that Trush participated in the events of 2014 regarding the capture of state authorities, and that Trush actively supports Russian narratives.

16. Since 2014, Trush has held various positions in the Supreme Ministry of Internal Affairs of the DPR. Most recently, since approximately June 2021, Trush has been the so-called "head of the intelligence department" of the Command of the Armed Forces/Military Academy of the Ministry of Internal Affairs of the DPR.

17. Trush is part of a criminal group that is credited with creating an agency network to collect information about the deployment of the armed forces of Ukraine.

18. Since as early as 2015, Defendant Synelnyk has communicated information to Trush.

19. Since as early as March 2021 and continuing until the June 27, 2023 attack, Defendant Synelnyk and Trush were in almost daily communication with each other.

*Plaintiff's Humanitarian Efforts in Ukraine*

20. Plaintiff John Doe, a college student and former United States Marine, volunteered to travel to Ukraine on a humanitarian mission to assist with medical training and the provision of medical supplies. He arrived in Kyiv, Ukraine in mid-June 2023 and then traveled east to Kramatorsk, where he was, among other things, assisting in a small hospital.

21. Once in Kramatorsk, Mr. John Doe sometimes met with other humanitarian aid workers, including U.S. nationals, at a popular café-pizzeria known as Ria Pizza, or the Ria Lounge.

*The Attack*

22. In the early evening of June 27, 2023, Plaintiff met another humanitarian aid

worker, an expatriate American who now lives in Ukraine, for dinner at the Ria Lounge. It was about the time of the dinner rush, and there was a large crowd at the restaurant.

23. Plaintiff sat at an outside picnic area of the café-pizzeria. After Plaintiff placed his order, the Ria Lounge was struck by a missile attack. The next thing Plaintiff remembers is waking up in the intensive care unit of a Ukrainian hospital.

24. The June 27, 2023 attack on the Ria Lounge killed 13 civilians and wounded 61. Children were among the victims.

25. The attack gained widespread media attention and was condemned by, among others, Ukraine, the United Nations, the United States, France and Sweden. Because it involved the use of a high-precision missile against a civilian target, it has been characterized as a war crime.

### *The Ria Lounge Was a Civilian Target Frequented by Foreigners, Including Americans*

26. Due to its particularly brazen and brutal assault on civilians, the June 27, 2023 attack on the Ria Lounge has been extensively investigated by, among others, the Ukrainian authorities and independent human rights and accountability organizations.

27. Investigations confirmed the Ria Lounge was a civilian target.

28. Investigations confirmed that the Ria Lounge was known to be frequented by foreign visitors, journalists, and aid workers, including Americans. As it is near the front line, soldiers are also known to dine there, but they do so unarmed, in their leisure time with their families and civilian friends.

29. The Ria Lounge was known to be, and was in fact, a place where civilians, including Americans, gathered. It was attacked to harm and intimidate civilians.

30. Civilians are not the proper targets of an armed attack under established norms

of international law and the laws of war.

31. Russia has employed a consistent strategy of attacking venues that host journalists.

32. The June 27, 2023 attack on the Ria Lounge, a known civilian target, for the sole purpose of murdering civilians for terrorist motives, with the cooperation of a terrorist group, was not committed during the course of war. *See Biton v. Palestinian Interim Self-Government Authority*, 412 F. Supp.2d 1, 10 (D.D.C. 2005) (attack on civilian non-combatants did not occur during the course of an armed conflict as a matter if law and therefore was actionable as terrorism).

### *Defendant Synelnyk Coordinates the Attack with his DPR handler, Trush*

33. On June 27, 2023, at approximately between 3:14 p.m. and 3:18 p.m., Trush contacted Defendant Synelnyk and instructed him to gather information about the Ria Lounge.

34. Defendant Synelnyk agreed to do reconnaissance of the Ria Lounge. In furtherance of this agreement, Defendant Synelnyk proceeded to the Ria Lounge and surreptitiously recorded two videos.

35. At approximately 5:34 p.m. on June 27, 2023, Defendant Synelnyk transmitted the two surreptitiously-recorded videos of the Ria Lounge to Trush though a mobile communication application called "Telegram." About five minutes later, Trush thanked Defendant Synelnyk and directed him to delete the previous messages, to which Defendant Synelnyk responded with a mobile-application communication "sticker."

36. At approximately 7:30 p.m., armed forces of the Russian Federation launched a missile attack on the Ria Lounge.

37. At approximately 9:21 p.m., Trush made four (4) consecutive calls to Defendant Synelnyk, but the calls were not answered. At approximately 9:22 p.m., Defendant Synelnyk

called Trush back.

38.     At approximately 9:48 p.m., Defendant Synelnyk sent Trush a video showing smoke emanating from where the Ria Lounge was located, and at approximately 9:49 p.m. Defendant Synelnyk sent Trush a video of the Ria Lounge from another angle showing the consequences of the attack.

### *A highly accurate cruise missile was used in the attack, indicating that the attack intentionally targeted the Ria Lounge*

39.     Investigations confirmed that the attack on the Ria Lounge was carried out by an Iskander-K cruise missile.

40.     The Ria Lounge had stable concrete floors. Its destruction and that of adjacent buildings indicates use of a missile with penetrating warhead, such as those with which Iskander-Ks are equipped, which effectively destroy fortified structures.

41.     The Iskander-K is a mobile short-range cruise missile launcher vehicle based on an 8x8 military truck chassis. No strategic bombers were recorded in Russian airspace at the time, nor was there any threat of the use of tactical aviation or navigation by the Russian Federation, thereby eliminating the possibility of air or sea-launched missiles.

42.     Cruise missiles are self-propelled, guided weapons. They are designed to fly at low altitudes and can be programmed to follow a specific flight path, often hugging the terrain, which makes them difficult to detect and intercept. Their ability to navigate and adapt during flight provides them with a high degree of accuracy.

43.     Witnesses to the Ria Lounge attack observed a low-flying rocket emitting the sound of a jet engine, followed moments later by a loud explosion. This could only have been a cruise missile, as ballistic missiles cannot be visually tracked with the human eye and their strikes are not preceded by the sound of a missile flying.

*Plaintiff's Injuries*

44. As a result of the attack on the Ria Lounge, Plaintiff suffered severe concussive impact blast injuries.

45. Plaintiff's injuries required and will continue to require medical care.

46. As a result of the missile strike, Plaintiff has been left with serious, permanent, and debilitating injuries resulting in pain and suffering and severe limitations with lasting and debilitating physical and psychological wounds.

## COUNT ONE
## INTERNATIONAL TERRORISM AGAINST DEFENDANTS SYNELNYK AND DPR

47. Plaintiff incorporates by reference each allegation set forth in paragraphs 1 – 46 as if fully stated herein.

48. Plaintiff is a national of the United States injured in his person by reason of the June 27, 2023 attack on the Ria Lounge.

49. Defendant Synelnyk, acting in concert with DPR, directed and personally participated in the planning and execution of the June 27, 2023 attack on the Ria Lounge.

50. The attack on the Ria Lounge involved violent acts or acts dangerous to human life that are in violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State.

51. Defendant Synelnyk and DPR intended: i) to intimidate or coerce the civilian populations of Ukraine, the United States, and other States; (ii) to influence the policies of the governments of Ukraine, the United States, and other States by intimidation or coercion; or (iii) to affect the conduct of the governments of Ukraine, the United States, and other States by mass destruction, assassination, or kidnapping.

52. The attack on the Ria Lounge occurred primarily outside the territorial

jurisdiction of the United States, or transcended national boundaries due to the means by which it was accomplished, the persons it intended to intimidate or coerce, or the locale in which its perpetrators operated.

53. The attack on the Ria Lounge was thus an act of international terrorism within the meaning of 18 U.S.C. § 2331(1) for which Defendant is liable to Plaintiff pursuant to 18 U.S.C. § 2333(a).

54. As a result of Defendants Synelnyk's and DPR's June 27, 2023 terrorist attack on the Ria Lounge, Plaintiff suffered bodily injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, medical care and treatment, and rehabilitation expenses. These losses are permanent and continuing in nature, and Plaintiff will suffer these losses in the future.

55. Defendants are liable for all of Plaintiff's damages in such sums as may hereinafter be determined, to be trebled pursuant to 18 U.S.C. § 2333(a).

WHEREFORE, Plaintiff John Doe demands judgment in his favor against Defendants Synelnyk and DPR for monetary damages, including treble compensatory damages, plus attorneys' fees, prejudgment interest and costs incurred in connection with this action, and such other and further relief as this Court deems just and appropriate.

Dated: September 9, 2025

Respectfully submitted,

*s/Seth Miles*
Seth Miles, Esq.
Florida Bar No. 0385530
seth@bucknermiles.com
**Buckner + Miles**
2020 Salzedo Street, Suite 302
Coral Gables, Florida 33134
Telephone: 305.964.8003
Facsimile: 786.523.0485

s/ *John Thornton*
John Thornton
Florida Bar No. 004820
jt@dandtlaw.com
**do Campo & Thornton, P.A.**
Chase Bank Building
150 S.E. 2nd Avenue, Ste. 602
Miami, Florida 33131
Telephone: (305) 358-6600
Facsimile: (305) 358-6601

s/ *Orlando do Campo*
Orlando do Campo
Florida Bar No. 0156582
od@dandtlaw.com
**do Campo & Thornton, P.A.**
Chase Bank Building
150 S.E. 2nd Avenue, Ste. 602
Miami, Florida 33131
Telephone: (305) 358-6600
Facsimile: (305) 358-6601

s/ *Daniela Jaramillo*
Daniela Jaramillo
Florida Bar No. 1002266
dj@dandtlaw.com
**do Campo & Thornton, P.A.**
Chase Bank Building
150 S.E. 2nd Avenue, Ste. 602
Miami, Florida 33131
Telephone: (305) 358-6600
Facsimile: (305) 358-6601